# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PATRICK DAVIS,

      Plaintiff,

  v.

JOHN and JANE DOES, *et al.*,

      Defendants.

No. 4:17-CV-00818

(Judge Brann)

## MEMORANDUM OPINION

### MARCH 31, 2020

Plaintiff Patrick Davis, a prisoner presently confined at State Correctional Institution at Rockview in Bellefonte, filed a complaint pursuant 42 U.S.C. § 1983 against Defendants asserting an Eighth Amendment failure to protect claim, an Americans with Disabilities Act ("ADA") claim, and related state law claims arising from an attack by another inmate against Plaintiff while Plaintiff was incarcerated at the State Correctional Institution at Huntingdon in Huntingdon, Pennsylvania.[1] Presently before the Court is a motion for summary judgment from all Defendants who have been served in this matter,[2] which is now ripe for adjudication.[3]  For the

---

[1]  Doc. 1.
[2]  There are various Doe defendants who have not been served and who have not been identified by Plaintiff despite the time for discovery having expired.  As explained *infra*, the Court will dismiss these parties.
[3]  Doc. 96 (motion).

reasons that follow, the Court will grant the motion for summary judgment and dismiss the unserved Defendants.

## I.     BACKGROUND

### A.     Allegations of the Complaint

Plaintiff, a mental health disability inmate with stability code "D," was assigned to the special needs unit ("SNU") at SCI Huntington.[4]   Plaintiff was removed from the SNU by his unit manager onto the BA Block.[5]   While housed on the BA Block, Plaintiff was stabbed from behind in front of the kiosk of Level One, BA Block, on July 22, 2016.[6]

Plaintiff alleges that two hours prior to his attack, John and Jane Doe security officers and other Doe Defendants were aware of an assailant who had assaulted non-party Inmate West in C Yard, and allowed the assailant to remain free for hours. This assailant then travelled to Plaintiff's block where he obtained or created a shank and then assaulted Plaintiff.[7]   Plaintiff alleges that assailant travelled through three check points to get to BA Block, and that it took the security staff hours before they identified the inmate who had assaulted inmate West.[8]   Plaintiff also alleges that

---

[4]   Doc. 1 at 6.
[5]   *Id.*
[6]   *Id.*
[7]   *Id.*
[8]   *Id.* at 7.

unnamed Defendants were aware of the assailant's security threat and history.[9]
Plaintiff alleges that he should have never been transferred from the SNU.[10]

A misconduct report attached to Plaintiff's complaint provides more detail
about the earlier assault.[11]  At 10:07 a.m. on July 22, 2016, the reporting officer who
was assigned to the CCTV post was viewing video when he saw Inmate Villot strike
Inmate West with a close fist from behind.[12]  Inmate Villot continued to punch West
until the inmates separated themselves.[13]  The reporting officer stated that it did not
appear that Inmate West fought back.[14]  The misconduct report was issued to Inmate
Villot with a class one charge for assault.[15]

After Plaintiff was assaulted, he was rushed to the emergency room and was
hospitalized there for three days in the intensive care unit, after which he was
transferred to the infirmary at SCI Smithfield, and then finally returned to SCI
Huntington for further care.[16]

Five days after Plaintiff was assaulted, Plaintiff obtained a grievance form
from two individuals (it is unclear whether these individuals are inmates or staff
members). However, those individuals could not assist Plaintiff with writing the

---

[9]   *Id.*
[10]  *Id.* at 8.
[11]  *Id.* at 17.
[12]  *Id.*
[13]  *Id.*
[14]  *Id.*
[15]  *Id.*
[16]  *Id.* at 9.

grievance, and there is a "no passing policy."[17]  Plaintiff states that he was partially paralyzed, had difficulty writing, and could not write the grievance within the fifteen day period.[18]  Specifically, Plaintiff alleges that he was in a neck collar and an upper sling.  He states that Defendant Jane Doe Grievance Coordinator said she would not allow another inmate to draft a grievance for him.[19]

### B.    Statement of Facts

Plaintiff filed the complaint in this matter pursuant to 42 U.S.C. § 1983 on May 10, 2017.[20]  Plaintiff's deposition occurred on October 9, 2019.[21]  Plaintiff testified that his complaint was written by another inmate, Alfonso Percy Pew.[22]  Despite the allegations of Plaintiff's complaint, it is now clear that the inmate who assaulted Plaintiff was Inmate West, who was the victim of the earlier assault, and not Inmate Villot, who assaulted Inmate West.

During his deposition, Plaintiff admitted that he has bipolar disorder, post-traumatic stress disorder, and anti-social personality disorder, and that his is a D-Code inmate, meaning that he is seriously mentally ill.[23]  Plaintiff also admitted that he was formerly affiliated with the "Crips" gang.[24]  Plaintiff further admitted that he

---

[17]  *Id.* at 10-11.
[18]  *Id.* at 11.
[19]  *Id.*
[20]  Doc. 98 at 1.
[21]  *Id.*
[22]  *Id.*
[23]  *Id.* at 2.
[24]  *Id.*

did not know the inmate who attacked him (Inmate West) although they lived on the same housing block.[25]   Plaintiff admitted that he had never been threatened by Inmate West nor had he been told that Inmate West "had it out for him."[26]   Plaintiff admitted that he did not know why he was attacked.  Plaintiff also admitted that he could not identify anyone who threatened him at SCI Huntingdon.  Plaintiff admitted that he never heard Defendant Harrish identify him as a confidential informant to other inmates.[27]

Plaintiff admitted he had been doing well on the SNU, prior to being sent to general population.[28]   Plaintiff admitted that the decision to put him in general population was made by the Program Review Committee.[29]

In addition, Plaintiff explained why he sued each named defendant.  Plaintiff stated that he sued gang affiliation officers because he thinks they should have known that Inmate West had assaults noted on his record despite the fact that he did not know if West had a gang affiliation.[30]

He testified that he sued Superintendent Tice because he told him that he could not go to general population in requests to staff.[31]   Plaintiff also stated that he sued the Deputy of Centralized Services, SNU Block Manager, Captains of shifts, Major

---

[25]   *Id.*
[26]   *Id.*
[27]   *Id.*
[28]   *Id.*
[29]   *Id.*
[30]   *Id.* at 3.
[31]   *Id.*

of the Guard, Superintendent Tice, the PRC Committee, Garman, Oliver and Houser because he had previously complained to them, but he was transferred back to SCI Huntingdon.[32]  Plaintiff testified that he sued Defendant Plummer because he was the head of security.  Plaintiff said that he has no evidence that Inmate West heard any alleged statement by Defendant Plummer about Plaintiff.[33]  Plaintiff testified that Defendant Smith failed to give him paperwork about a separate assault that occurred on March 26, 2015.[34]

Plaintiff testified that he sued Defendant Johnston because Johnston had been told about a previous problem, but he was brought back to Huntingdon.[35]  Plaintiff admitted that he did not know why he sued Defendant McCoy.[36]  Plaintiff testified that Defendant Coley would "say stuff."[37]  Plaintiff admitted that he had no evidence that Inmate West heard any comments by Defendant Coley, and he admitted that he did not know why Inmate West attacked him.[38]  Plaintiff testified that Defendants Houser, Garman, Fogel, Walters and Oliver were sued because of their roles on the Program Review Committee.[39]  Plaintiff admitted that he did not know Defendant J. Thomas or why he was sued.[40]  Plaintiff testified that Defendant Barnacle should

---

[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.* at 4.
[36] *Id.*
[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Id.*

have known about his problem due to his role in the Office of Special Investigations and Intelligence;[41] Plaintiff admitted he never spoke to Defendant Barnacle.[42] Plaintiff admitted that he sued Defendant Smeal because she "should have known."[43] Plaintiff sued Secretary Wetzel because he had signed the policies allowing for the D-Code psychiatric classification.[44]

Plaintiff testified that Superintendent Tice "intimidated" him by telling Plaintiff to "give me time and I'm going to figure these things out" regarding the assault against him.[45] Plaintiff did not file a grievance regarding the attack on July 22, 2016;[46] In his declaration in support of his opposition to the motion, Plaintiff states that he had difficulty obtaining a grievance form but finally received one from another inmate.[47]

Because he was partially paralyzed and he could not write out the grievance, he had another inmate write it out for him. The grievance coordinator, however, told Plaintiff that he could not have another inmate write out his grievance on his behalf. It appears that at no point did Plaintiff request formal assistance from the grievance coordinator due to his partial paralysis nor did he request an extension of time in which to submit the grievance.

---

41 *Id.*
42 *Id.*
43 *Id.* at 5.
44 *Id.*
45 *Id.*
46 *Id.*
47 Doc. 105 at 4.

## II.    Standard of Review

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.[48]  A disputed fact is material when it could affect the outcome of the suit under the governing substantive law.[49]  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[50]  The Court should view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor.[51]  When the non-moving party fails to refute or oppose a fact, it may be deemed admitted.[52]

Initially, the moving party must show the absence of a genuine issue concerning any material fact.[53]  Once the moving party has satisfied its burden, the non-moving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment."[54]  "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as

---

[48]   Fed. R. Civ. P. 56(c).
[49]   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[50]   *Id.* at 250.
[51]   *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).
[52]   *See* Fed. R. Civ. P. 56(e)(2); Local R. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.").
[53]   *See Celotex Corp. v. Carrett*, 477 U.S. 317, 323 (1986).
[54]   *Anderson*, 477 U.S. at 257.

great as a preponderance, the evidence must be more than a scintilla."[55]  "If a party

. . . fails to properly address another party's assertion of fact as required by Rule

56(c)," a court may grant summary judgment or consider the fact undisputed for

purposes of the motion.[56]

If the court determines that "the record taken as a whole could not lead a

rational trier or fact to find for the non-moving party, there is no 'genuine issue for

trial.'"[57]  Rule 56 mandates the entry of summary judgment against the party who

fails to make a showing sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial.[58]

## III.  DISCUSSION

### A.  Administrative Exhaustion

Defendants argue that Plaintiff has failed to exhaust his administrative

remedies, which bars his Eighth Amendment failure to protect claim as well as his

ADA claim.  A review of the record demonstrates that Plaintiff failed to file or

exhaust any grievance regarding his assault by Inmate West.

Section 1997e(a) of Title 42 provides:

No action shall be brought with respect to prison conditions under
section 1983 of this title, or any other Federal law, by a prisoner

---

[55]  *Hugh*, 418 F.3d at 267 (citing *Anderson*, 477 U.S. at 251).

[56]  Fed. R. Civ. P. 56(e)(2)-(3).

[57]  *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

[58]  *Celotex Corp.*, 477 U.S. at 322.

confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Exhaustion, as a precondition for bringing suit, is a "'threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time.'"[59] "[T]he . . . exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[60]   A prisoner must exhaust all available administrative remedies even where the relief sought, such as monetary damages, cannot be granted through the administrative process, as long as the grievance tribunal has authority to take some responsive action.[61]

The applicable procedural rules for properly exhausting administrative remedies "are defined not by [§ 1997e(a)], but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by [§ 1997e(a)] to 'properly exhaust.'"[62]   The burden of proving non-exhaustion lies with the defendants asserting the defense.[63]   A court evaluating the "threshold" issue of

---

[59]   *Small v. Camden County*, 728 F.3d 265, 270 (3d Cir. 2013).
[60]   *Porter v. Nussle*, 534 U.S. 516, 532 (2002).
[61]   *Booth*, 532 U.S. at 741.
[62]   *Jones v. Bock*, 549 U.S. 199, 218 (2007).  *See Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010) ("[W]hether a prisoner properly exhausted a claim is made by evaluating compliance with the prison's specific grievance procedures.").
[63]   *Jones*, 549 U.S. at 212, 216–17.

exhaustion looks at whether the inmate "compli[ed] with the prison's specific grievance procedures" and whether those procedures were available to the inmate.[64]

In Pennsylvania, the Department of Corrections ("DOC") has established a comprehensive administrative grievance procedure, DC-ADM 804.[65]  Under that procedure, a prisoner must first submit a timely written grievance for review by the facility manager or regional grievance coordinator within fifteen days from the date of the incident.[66]  Inmates who need special assistance to utilize the grievance system due to a disability shall be provided with that additional assistance, and in order to ensure that the assistance is provided, "[t]imeline extensions shall be granted in order to secure those services."[67]

DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "shall identify individuals directly involved in the events," and "shall specifically state any claims he wishes to make concerning violations of Department directives, regulations, court orders, or other law."[68]  A response should be received within ten business days.[69]  Next, the prisoner must submit a timely written appeal to an intermediate review level within ten working

---

[64] *Rinaldi v United States*, 904 F.3d 257, 265 (3d Cir. 2018) (quoting *Drippe*, 604 F.3d at 781, and *Small*, 728 F.3d at 269-71).

[65] *See* DC-ADM 804, *Inmate Grievance System*, Pa. Dep't of Corrs., *available at* https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf.

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Id.*

days.[70]  Again, a response should be received within ten working days.  Finally, the

inmate must submit a timely appeal to the Central Office Review Committee, also

known as the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"),

within fifteen working days, and the inmate should receive a final determination in

writing within thirty days.[71]  To fully exhaust an issue or incident in accordance with

DC-ADM 804, "[a]n inmate must exhaust all three levels of review and comply with

all procedural requirements of the grievance review process."[72]

It is undisputed that Plaintiff failed to file a grievance regarding his assault by

Inmate West.  Plaintiff argues, however, that the grievance system was unavailable

to him because he was unable to fill out the grievance form within the time for filing

a grievance due to his partial paralysis, the grievance coordinator would not permit

another inmate to draft the grievance for him, and Superintendent Tice intimidated

him.

In *Ross v. Blake*,[73] the Supreme Court of the United States outlined the three

instances in which remedies would not be "available" such that exhaustion may be

excused: (1) when an administrative procedure "operates as a simple dead end with

---

70  *Id.*

71  *Id.  See also Booth v. Churner*, 206 F.3d 289, 293 n.2 (3d Cir. 1997), *aff'd*, 532 U.S. 731
   (2001) (discussing the exhaustion process for Pennsylvania state prisoners under an older
   version of DC-ADM 804).

72  *Stroman v. Wetzel*, No. 1:16-CV-2543, 2019 WL 931653, at *3 (M.D. Pa. Feb. 26, 2019).
   *See also Garcia v. Kimmell*, 381 F. App'x 211, 213 n.1 (3d Cir. 2010) ("Proper exhaustion in
   Pennsylvania requires completion of a three-part procedure; initial review, appeal, and final
   review.").

73  136 S. Ct. 1850 (2016).

officers unable or consistently unwilling to provide relief to aggrieved inmates;" (2) where the administrative remedies are so unclear that "no ordinary prisoner can make sense of what it demands;" and (3) where prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."[74]  "[O]nce the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him."[75]

The Court finds that Plaintiff has failed to establish that such remedies were unavailable to him.  Specifically, Plaintiff could have requested assistance from the grievance coordinator to accommodate his partial paralysis or he could have requested an extension of time to file the grievance, both of which are permitted in DC-ADM 804.  In fact, a time extension is mandatory if the assistance services cannot be provided within the fifteen day period for filing a grievance.  Because Plaintiff could have requested a time extension in which to file his grievance, the grievance procedure was "available" to him.[76]

Further, that another inmate was not permitted to draft the grievance for Plaintiff does not render the grievance procedure unavailable.  The grievance policy plainly provides that "[a] grievance submitted by one inmate for another inmate . . .

---

[74]  *Id.* at 1859-60.  *See also Rinaldi*, 904 F.3d at 266-67.
[75]  *Rinaldi*, 904 F.3d at 268.
[76]  *See, e.g., Wallace v. Miller*, 554 F. App'x 40, 42 (3d Cir. 2013); *Jordan v. Bertolini*, No. 15-cv-313, 2018 WL 3737917, at *5 (W.D. Pa. Aug. 6, 2018).

is prohibited and will not be processed."[77]   In addition, Superintendent Tice's statement "give me time and I'm going to figure these things out" could not be construed as intimidation and did not prevent Plaintiff from filing a grievance.

Accordingly, this Court finds that as a matter of law, Plaintiff failed to exhaust the administrative remedies that were available to him, as he is required to do by § 1997e(a) prior to filing suit as to the Eighth Amendment failure to protect claim and the ADA claim. I will grant the motion for summary judgment as to those claims.

### B.   Unserved Doe Defendants

Although in some instances it is appropriate for a court to enter summary judgment *sua sponte* in favor of parties for whom judgment in their favor is proper but for whatever reason have failed to join in the motion,[78] the Court declines to do so here because the remaining Defendants have not been served.[79]   Specifically, Defendants John and Jane Does, Internal Security Officers, Internal Intelligence Officers, Gang Affiliation Officers, Post Officers, Miller, Chaplain John Doe, SNU

---

[77]   *See* DC-ADM 804, *Inmate Grievance System*, at 6.

[78]   *See Celetex*, 477 U.S. 317, 326 ("Our conclusion is bolstered by the fact that district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence."); *Gibson v. Mayor & Council of City of Wilmington*, 355 F.3d 215, 223-24 (3d Cir. 2004) (upholding district court's grant of *sua sponte* summary judgment and concluding that such an action is appropriate and in conformance with circuit precedent when the record is fully developed, prejudice is lacking, and the issue is purely legal).   *See also Chambers Dev. Co. v. Passaic County Utilities Auth.*, 62 F.3d 582, 584 n.4 (3d Cir. 1995) ("[A]uthority has developed to allow a court to grant summary judgment to a non-moving party.").

[79]   It appears that these defendants have not been served because Plaintiff has failed to identify the Doe defendants.

14

Unit Managers, Program Review Committee Members, Deputy of Security, Deputy of Centralized Services, Deputy of Facility Management, and Gang Unit Supervisors Central Office have not been served in this matter nor has Plaintiff endeavored to determine their identities.[80] The time for discovery and to amend pleadings has long since passed. As such, these Defendants will be dismissed.[81]

### C.   Remaining State Law Claims

Having determined that summary judgment is appropriate in Defendants' favor on Plaintiff's federal claims brought pursuant to 42 U.S.C. § 1983 and the ADA, the remaining claims of assault, battery, negligence, and negligent infliction of emotional distress present issues of state law over which this Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

"The district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." "The decision to retain or decline jurisdiction over state-law claims is discretionary" and "should be based on considerations of judicial economy, convenience and fairness to the litigants." Additionally, federal courts should be guided by the goal of avoiding "[n]eedless decisions of state law . . . both as a matter of comity and to promote justice between the parties." Declining to exercise supplemental

---

[80]   *See* Fed. R. Civ. P. 4(m) (requiring service to be made within ninety days).

[81]   "Fictitious names must eventually be dismissed, if discovery yields no identifies." *Scheetz v. Morning Call, Inc.*, 130 F.R.D. 34, 36 (E.D. Pa. 1990).

jurisdiction is especially warranted when the case calls for interpreting a state constitution.  The Third Circuit has recognized that where all federal claims are dismissed before trial, "the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.

Because Plaintiff's remaining claims concern interpretations of Pennsylvania law, and the federal claims have been dismissed before trial, the prudent course is to decline to exercise supplemental jurisdiction over the state law claims.  For these reasons, the Court will dismiss Plaintiff's state law claims without prejudice for lack of jurisdiction, in accordance with 28 U.S.C. § 1367(c)(1).

## IV.   CONCLUSION

Based on the foregoing, the Court will grant the motion for summary judgment and dismiss the claims against the Doe Defendants.  An appropriate Order follows.


BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge